THE HOME INSURANCE COMPANY, RESPONDENT, *v.* THE
PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

*Insurance company — subrogation to rights of the insured — Local action — interest
on verdict.*

In an action brought in this State by an insurance company, which had paid to
the insured the loss covered by its policy, to recover for the burning of a barn
(the building insured) in the State of Pennsylvania, through defendant's neg-
ligence, *held,*

That the statutes of this State requiring that actions to recover for injuries to
real property be tried in the county where the subject of the action is situ-
ated, related only to causes of action arising within this State.

That the *gravamen* of the present action was the negligence, and actions of such a
character were personal and transitory.

That the objection that the owner (the insured), and not the company, claiming
by right of subrogation, should be party plaintiff, to be available, should have
been taken by answer.

In such an action, evidence of emission of sparks by plaintiff's engines, prior and
subsequent to the time of the burning in question, is admissible.

It is error for the judge in such case to charge that interest must be added, by
the jury, to the amount paid to the insured by the company, in case a verdict
be rendered in the company's favor.

In actions sounding in damages the jury may allow interest or not.

The proper charge to a jury in an action of this nature considered.

APPEAL by the defendant from a judgment in favor of plaintiff,
entered on the verdict of a jury, and from an order denying a motion
for a new trial.

*Ashbel Green,* for the appellant.

*Geo. W. Parson,* for the respondent.

BRADY, J. :

The plaintiff is an insurance corporation of the State of New
York, and the defendant is a railroad corporation of the State of
Pennsylvania, incorporated under a charter allowing it to use steam
locomotives. In and before October, 1866, Dr. W. W. Rutherford
was the owner of a barn situated near the line of the defendant's
road, a few miles from Harrisburg, in the State of Pennsylvania.

The nearest part of this barn was thirty-seven feet from the track. This barn and its contents were insured with the plaintiff, by Dr. Rutherford, for $1,600, $800 on the barn and $800 on hay and grain and stock contained therein.   About the 3d of October, 1867, the barn and its contents were consumed by fire; and on the 23d of December, 1867, the plaintiff paid Dr. Rutherford $1,600.   This the plaintiff now seeks to recover from the railroad company, defendant, upon the doctrine of subrogation, Dr. Rutherford having refused to assign his claim.

The charge against the defendant was, that the fire was caused by sparks emitted from one of their locomotives which passed the premises on the day of the fire, and that the smoke-stacks connected with them were not of the most approved pattern in reference to the suppression of the emission of sparks.   The testimony on the subject of the efficiency of stacks was in conflict.   It appeared that another form was in practical use better adapted to the object to be accomplished.   It also appeared that the barn, which was a short distance from the track, had been built before the road was constructed.   There was evidence also bearing upon the subject of contributory negligence.   It was shown, for example, that some loose straw was lying in the barn-yard, and that some chips of wood were also there which had accumulated.   The presence of the straw in the yard was partially explained.   The defendant accounted by the evidence for the good condition of their respective engines going east and west, in addition to the proof showing the fitness of the smoke-stacks used by them for the purpose for which they were employed.

The testimony was duly submitted to the jury, who found in favor of the plaintiff.

Several questions were presented on the argument which it may be necessary to consider.   The defendant then asserted for the first time that this court had no jurisdiction of this action, because it was one to recover for injuries to real property, and was, therefore, local.   The answer to this proposition is that the statute of our State on that subject relates only to causes of action arising within it.   (*Barney* v. *Burstenbinder*, 7 Lans., 210.)   In the case just cited, which was for injuries to the personal and real estate of the plaintiff in California by the negligence of the defendants, the

court said the injury to the real estate is only one element of the damages. The distinction was further presented that the *gravamen* of the action was negligence, and actions of that character were personal and transitory. The question presented has, therefore, been considered and determined in effect in this district, and the result remains the law until reversed by the court of last resort. (The case of *Gardner* v. *Ogden* (22 N. Y., 327) furnishes illustrations of the instances in which this court may exercise its authority relative to land in a foreign State, when jurisdiction has been acquired by the appearance of the parties.)

The defendants also claim that this action cannot be maintained by the plaintiffs in their own name. The response is that such an objection must be taken by answer or it is waived (Code, 144, 148), and this answer thus given is equally responsive to the proposition that although the right of subrogation may exist, the action to enforce it must be in the name of the assured, he holding the legal title. Whatever may have been the rule prior to the Code, the action, if brought now in the name of the person holding the equitable title, which is the plaintiffs' right, may be maintained if the answer does not set up as a defense the assumed defect. When the objection goes to the form only, and therefore to the shadow, and not to the substance, the provisions of the Code and the spirit of the system inaugurated by it require that it be regarded as technical, and to be effective only where it is averred, and this is required that any amendment necessary to overcome it may be made at once. This is a just rule where a right of action exists in any form, legal or equitable. The right of the plaintiffs acquired by subrogation does not seem to be seriously contested. Under these circumstances we are not called upon to consider more particularly the objection mentioned, the answer being silent on the subject.

The further objection that proof of prior and subsequent emission of sparks by the defendant's engines, or some of them, was improperly permitted, is untenable. Such evidence has been declared to be admissible in actions of this class. (*Sheldon* v. *The Hud. R. R. R. Co.*, 4 Kern., 218; *Field* v. *The N. Y. Cent. R. R. Co.*, 32 N. Y., 339; *Webb* v. *R., W. and O. R. R. Co.*, 49 id., 420.) The proof of the direction in which the wind was blowing was also

entirely competent. (*Sheldon* v. *The Hudson R. R. R. Co.*, *supra.*) The exception to the exclusion of a part of the evidence of Charles W. Gordon, and by which it might have certainly appeared that he examined the smoke-stack of the locomotive 379 on the day of the fire, and that it was in perfect order, is not available to the defendant. There was no evidence to the contrary. James Philips, the engineer of that locomotive on the day of the fire, was examined on behalf of the plaintiff, and testified that his engine was in good condition, and that statement, it is apparent from his evidence, included the smoke-stack.

He did not regard them as separated from each other. This being the case the plaintiff had shown that the smoke-stack was in good condition. Beside that it is very clearly apparent, that the case was submitted to the jury on the proposition that the defendant did not employ the improved or better smoke-stack then in use by other companies, and by which it was claimed greater security was accomplished. The charge of the learned judge relates to this subject and not to the condition of the smoke-stack. It treats the issue as one involving the form or construction of the smoke-stack and not its condition as to repairs. There can be no doubt of this view after a careful perusal of the charge, and we cannot see, therefore, that, under the circumstances, the exclusion mentioned could have affected the interests of the defendant. There was no dispute about the condition of the smoke-stack of engine 379, and the testimony was unnecessary, therefore; and, again, the issue submitted to the jury, as we have seen, did not involve any proposition connected with such condition. The dispute was as to the mode of construction. In that regard the witness Philips testified that the kind of smoke-stack employed by the defendants had been in use by them for six months prior to the fire; that the reputation of it was very good, and that he knew of none better, and this was in their favor. This is the only exception arising either from the admission or exclusion of testimony, to which we deem it necessary particularly to refer.

The right of the plaintiff to succeed depended entirely upon the negligence of the defendant and the absence of contributory negligence on the part of the assured or his agents. These questions were submitted to the jury, with full instructions, and were found

against the defendant. There was no direct proof of the fact that the sparks from the defendant's engines, or one of them, occasioned the fire, but there was evidence of the emission of sparks and of the transit of defendant's locomotives about the time of the fire. This evidence was sufficient to justify the conclusion that the fire originated from that cause. Indeed there was no pretense of any other origin. The defendant's counsel secured by exception and a faithful and able discharge of his duty, every advantage which could spring out of the proceedings on the trial and on the argument, but it is patent that the judgment may be sustained in part at least. The charge of the learned justice presiding was as favorable to the defendants as they could properly require it to be. Of the numerous requests made few were denied, and those which were refused were properly rejected. For example, this ingenious request was asked: "In this case the emission of sparks from the stack of a locomotive is not in itself illegal." If the court had charged that proposition unqualifiedly it would have substantially disposed of the case. It was qualified by a union with the rule that it involved the question whether the defendants used the best-known appliances in practical use. The emission of sparks from a locomotive, which in that respect was imperfect and dangerous, would be in itself illegal because the defendant cannot employ such constructions in the use of their franchise with impunity.

The learned justice was also asked to charge as follows:

8. "As matter of law, there is no evidence of any knowledge, on the part of the defendant, in October, 1867, of any better smoke-stack than the one in use by them, which had been established by known practical use." But the court said: "I do not think it is matter of law; I think that is matter of fact. I refuse to charge that as matter of law." This disposition of it was proper. There was some evidence bearing upon the subject, and the question was one of fact, and not of law exclusively. When the jury said they did know if they should so decide, then it became, as to them, matter of law by the application of the fact found.

The learned justice was also requested to charge as follows:

"That even if the jury find that the fire was actually caused by a spark from the defendant's locomotive, still, if they also find that the engines of the defendant were properly and skillfully made,

and furnished with such appliances for the prevention of fire as had been found practically serviceable, and that they were in the charge of skillful and proper persons, the plaintiff cannot recover." To which the answer was properly made and the law expressed: "I will say — 'with the best appliances for the prevention of fire, which had been found practically serviceable' — with that alteration, I charge the proposition." The exception taken cannot, therefore, be sustained. The learned justice was also requested to charge that the jury could not allow for any damages to the barn or other real estate, and, also, that the court should direct a verdict for the defendant. Both requests were denied, and separate exceptions taken. The first of those is predicated of the assumed want of jurisdiction, and is untenable. The second was not seriously proposed on any other doctrine than want of jurisdiction and the inability of the plaintiff to sue. Neither of the exceptions were, therefore, well taken.

It thus appears that out of sixteen requests to charge, ably, ingeniously prepared, the defendants were allowed ten; among them were the following:

1. The use of locomotives in the business of railroads is lawful, and no presumption of negligence arises from the mere fact that fire has been communicated from them.

2. Negligence cannot be inferred from the simple fact of causing the fire.

4. The jury must have no reasonable doubt that the fire originated from the defendant's locomotives; it is not enough that it might have so originated.

3. The defendants were not bound to use every possible preventive which the highest scientific skill might have suggested, nor to adopt an untried machine or mode of construction.

4. The defendants are not to be held guilty of negligence because they did not adopt another kind of smoke-stack, even if the jury believe it better than the one used, unless practical men had put it into such use, and so established its capabilities as that it ought to have become known to the defendants.

5. "That the plaintiff has no greater rights than Rutherford would have had if he were the plaintiff in this action."

6. "That Rutherford and his tenants were bound to use such care

in protecting his premises as a man of ordinary prudence would have employed under the circumstances; and if, through his neglect or that of his tenants, his property was destroyed, or if such neglect, on the part of Rutherford or his tenants, concurred with negligence on the part of the defendants in producing the result, the plaintiff cannot recover."

7. "That the plaintiff cannot recover unless it appears that Rutherford was free from any negligence, without which the fire would not have happened.

8 " The greatest negligence on the part of the defendant will not cure the defect of the least negligence contributing to the injury, on the part of Rutherford or his tenants.".

The requests on the part of the plaintiff granted and excepted to were in harmony with the rules of law applicable to this class of cases, and therefore unobjectionable. They were warranted by the facts disclosed and the testimony given. Upon the questions of negligence on either side the jury were the arbiters, and seem to have disposed of them in accord with the evidence given. We do not feel called upon to express any dissatisfaction with the verdict.

When a corporation exercises a dangerous right, it should be done in such a manner as to insure the safety of life and property, if it can be accomplished. This duty should not be limited by the imposition of greater vigilance on the part of the injured person to protect himself against the errors and infirmities of the corporation, its agents, instruments or employes. Reasonable care on the one hand, and resort to all known appliances for safety on the other, is the golden rule determining and controlling the relations between the public and the corporation. The auxiliaries to the application of that rule, called into play in this case, have been extended to both sides without error, and, therefore, without injustice, and the result in that respect must be sustained.

These views present the judgment of this court upon all the questions which we consider it necessary to examine in detail, save one exception which was well taken, and that was to the direction of the court that the interest must be added to the sum of $1,600, if the jury found for the plaintiff. The defendants were liable for damages, and in actions sounding in damages the jury may allow interest or not, as they shall determine. If given, it is a part of

the damages. It is an element of them. The plaintiffs were in the place of the assured, and bound by the rules which would have controlled him. The allowance of interest was, therefore, a matter of discretion for the jury. Diligent search has revealed no case sustaining the converse of this proposition, which is familiar, and the plaintiff's case does not present any element which calls for the application of a new rule. The interest was said, by the learned justice presiding, to be $700, and there must, therefore, be a new trial, unless the plaintiffs consent to reduce the judgment that amount. If such consent be given, it will be affirmed for the balance, without costs to either party, otherwise it is reversed, and a new trial ordered, with costs to abide the event.

DANIELS, J. :

The fire by which the barn, and the property it contained, were destroyed occurred in the afternoon of a day in October, 1867. It was the only afternoon which had become an important subject of reference during the trial ; for that reason when the witness Gordon stated that he examined the engine " on that afternoon," it plainly referred to the afternoon of the fire, and must have been so understood by the jury. That rendered the preceding statement, which the court excluded, that it was on the day of the burning of the barn that he made the examination, a mere repetition of the evidence which was received, and its exclusion was not error. In other respects, I concur in the opinion of Mr. Justice BRADY.

DAVIS, P. J., concurred.

Judgment reversed, new trial ordered, costs to abide event, unless plaintiff consent to reduce the judgment as suggested in opinion, in which event judgment, as so reduced, affirmed without costs.